## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LIFENG LEE HSU,               :

                            :

             Plaintiff,      :

                            :

       v.                    :   C. A. No. 06-401-MPT

                            :

GREAT SENECA FINANCIAL      :

CORPORATION, et al.,         :

                            :

            Defendants.   :

## MEMORANDUM ORDER

On June 23, 2006, Lifeng Lee Hsu ("Hsu") filled a complaint as a *pro se* plaintiff[1]

against Great Seneca Financial Corporation ("Great Seneca"),[2] Wolpoff & Abramson,

L.L.P. ("W&A" or "Wolpoff & Abramson"),[3] Fox Rothschild, L.L.P. ("Fox Rothschild"),[4]

and Neal J. Levitsky, Esquire ("Levitsky")[5] (collectively, "defendants"), alleging violations

of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.* based

on efforts to collect a debt for a Chase MasterCard purportedly owed by Hsu to Great

Seneca. Defendants moved to dismiss the complaint. Subsequently, on March 12,

2007, the court orally granted Hsu's motion for leave to file an amended complaint

which was filed on March 13, 2007 and added claims for fraud and civil conspiracy.

Defendants then filed a motion to dismiss the amended complaint. This order

---

[1] Hsu is an individual residing in Hockessin, Delaware.

[2] Great Seneca is a Maryland corporation.

[3] Wolpoff & Abramson is a law firm located in Rockville, Maryland.

[4] Fox Rothschild is a Pennsylvania limited liability partnership having a law office in Wilmington, Delaware.

[5] Levitsky is an attorney and Office Managing Partner of Fox Rothschild's Wilmington, Delaware office.

addresses that motion.[6]

## BACKGROUND

### A.    The State Action

On June 29, 2005, Levitsky and Fox Rothschild filed suit on behalf of Great

Seneca (as assignee) against Hsu seeking payment on the balance due and owing on

a credit card debt ($11,616.00), together with interest at 24% percent per annum from

February 18, 2005 until paid plus court costs plus attorneys' fees of 20 percent in the

Court of Common Pleas for the State of Delaware in and for New Castle County

("CCP").[7]

On August 17, 2005, Hsu filed an answer denying the debt and a counterclaim

alleging that Great Seneca violated the FDCPA by allegedly continuing collection

attempts before providing defendant with written verification of the debt.  On August 30,

2005 Great Seneca filed a motion to dismiss Hsu's counterclaim denying that any of its

actions amounted to "collection activity" contending that Great Seneca is not a debt

collector.  It stated that the FDCPA does not apply because Great Seneca is the owner

of the debt and is thus a creditor.  Great Seneca asserted that, even if the FDCPA were

to apply, "[Hsu] has not alleged [Great Seneca] wrote to or spoke with [Hsu] in an effort

to recover the outstanding balance."  On September 30, 2005, the CCP dismissed

---

[6] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to the jurisdiction of United States Magistrate Judge Mary Pat Thynge "to conduct any and all proceedings in this case including the trial, order and entry of final judgment, and conduct all post-judgment proceeding[s]." Plaintiff's answering brief in opposition to defendants' motion to dismiss was also captioned as being in support of plaintiff's cross-motion for summary judgment.  On April 19, 2007, the court denied plaintiff's cross-motion for summary judgment without prejudice with leave to re-file.  Because the amended complaint is the operative pleading, citation to Hsu's allegations are to that document.

[7] CCP docket sheet for *Great Seneca Financial Corp. v. Hsu*, C.A. No. 2005-06-493, current as of 07/06/2006.

Hsu's counterclaim alleging violation of the FDCPA without prejudice. On December 30, 2005, Great Seneca filed a motion for summary judgment and on January 18, 2006 Hsu filed an opposition to that motion for summary judgment and a cross-motion for summary judgment.

Hsu opposed Great Seneca's motion maintaining: (1) that no contractual obligation to Great Seneca existed because he was only an authorized user on the account; (2) that counsel for Great Seneca, along with its law firm, engaged in the unauthorized practice of law; and (3) that pursuant to 15 U.S.C. § 1692(g)(b) he was shielded from any attempt at litigation by Great Seneca's counsel or his law firm. Hsu attached to his opposition and cross-motion a copy of his TransUnion credit report. That report lists the Chase MasterCard account with a field titled "Responsibility" which recited "Authorized Account." Hsu argued that the credit report supported his contention that he is merely an authorized user on the account and not the primary cardholder on the account and, therefore, there is no contractual relationship to plaintiff. In Great Seneca's February 1, 2006 reply and opposition to [Hsu's] Cross-Motion, it argued:

> The notation on [Hsu's] credit report reflects that this account was . . . opened under [Hsu's] name as the primary accountholder according to [Hsu's] authorization and request. The credit bureaus only report accounts for the responsible accountholders such as [Hsu] on this account. *[Hsu] mistakenly claims that the language "authorized account" is equivalent to an authorized user notation. This is simply incorrect and [Hsu], again, is attempting to attempt to avoid his repayment obligations. Notably, [Hsu] does not submit any documentation in connection with his credit account substantiating his claims but instead relies upon his misinterpretation of the third party credit reporting bureau's*

3

*documentation*.[8]

One February 3, 2006, the CCP's docket provides:

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, CROSS MOTION
AND OPPOSITION TO PLAINTIFF'S MOTION PRESENTED BEFORE
JUDGE JOSEPH FLICKINGER. AFTER HEARING FROM BOTH
PARTIES, . . . BOTH MOTIONS FOR SUMMARY JUDGMENT WERE
DENIED *WITH THE EXCEPTION OF ISSUE OF US CODE*. MEMOS
DUE 2/17/06 BY PLAINTIFF AND ON 3/3/06 BY DEFENDANT; FILE
WILL THEN BE SENT TO JUDGE FLICKINGER FOR REVIEW AND
POSSIBLE SCHEDULING. *[GREAT SENECA] IS TO SUPPLY
VERIFICATION OF POLICY TO [HSU] AND [HSU] IS TO SUPPLY A
VERIFIED AUTHORIZED USER AFFIDAVIT*.[9]

On February 17, 2006, Great Seneca filed a memorandum of law in opposition to

Hsu's motion for summary judgment arguing that Hsu was misapplying the FDCPA and

that, even if that statute applied, Great Seneca was in full compliance. It also argued

the Hsu did not present "any exhibits that evidence a verification request that should fall

within the purview of Sec. 1692g."[10] Hsu contended that the first communication he

received from Great Seneca was a letter dated February 23, 2005 from Paul T. Oliver,

Jr., Esq. ("Oliver") of Wolpoff & Abramson. The letter (which indicates that Oliver is

admitted to practice law in the State of Michigan) states "I urge you to take advantage

---

[8] Emphasis added by the CCP.
[9] Emphasis added by the CCP.
[10] 15 U.S.C. § 1692g(b) recites: "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

4

of your right to dispute this debt as described in the important notice on the reverse side

of this letter."[11] Hsu maintained that on March 21, 2005, he mailed a reply to Great

Seneca stating:

> I am writing this letter to dispute the validity of the above mentioned
> debt.  I could not find in my record any transaction with Chase Manhattan
> in the past 18 months.  However, I found in my credit report that I am only
> an authorized user of the above account number, so i do not have any
> contractual obligation to this account.
> I am sorry that I will not call your company because I would prefer
> written communication.

Hsu also alleged that when he received no response to the letter he purportedly

mailed on March 21, 2005, he mailed a second letter on June 7, 2005 stating:

> In my previous letter dated 03/21/05 sent to Mr. Paul Oliver in your
> office, I disputed the validity of the debt. . . .  So far I have not yet received
> any verification of the debt from your office.  If your office believes that I
> am the owner of this account, please provide me with the following
> documents:
>
> 1.  Loan agreement that bears my signature.
> 2.  The history and nature of this loan.
> 3.  The document that shows that I am the owner of the above mentioned
> account.
>
> I am sorry that I will not call your office because I would prefer
> written communication.[12]

Great Seneca denied ever receiving a written request for verification of the debt from

Hsu within thirty days of its initial February 23, 2005 letter to Hsu.  Great Seneca denied

ever receiving any correspondence from Hsu and, assuming that the FDCPA applies, it

contended that "[Hsu's] debt was 'assumed to be valid'" and that, despite no purported

---

[11] The CCP noted that no copy of the reverse side of the letter appeared in the record before it.
The reverse side of the letter is included as an attachment to Hsu's brief in opposition to Great Seneca's
motion to dismiss in this case.

[12] D.I. 8, Ex. 3 at 3.

obligation to do so, it had previously provided Hsu with copies of the account statement, "including throughout discovery." Great Seneca argued:

> Where verification is requested, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is that the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. Consistent with the legislative history, verification is only intended to "eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Where verification is requested within thirty (30) days received prescribed by the FDCPA, once the debt collector provides verification, the debt collector may proceed with collection including instituting a lawsuit. . . . [Great Seneca's] counsel are not parties to this matter and this matter was commenced properly under state and federal law.

Hsu countered that Great Seneca was not in full compliance with the FDCPA for several reasons. First, Hsu contended that Oliver is "likely retired." Second, he maintained that Oliver did not engage in a meaningful review of Hsu's case, notwithstanding indication to the contrary in the February 23, 2005 letter bearing Oliver's signature. Third, Hsu alleged that Ronald S. Canter, Esq. ("Canter") affirmed that Oliver reviewed Hsu's file and, therefore, Canter was not in compliance with the FDCPA. Fourth, Hsu argued that his letters to Great Seneca constitute a written request for verification of the debt for purposes of the FDCPA. Fifth, and finally, Hsu contended that the FDCPA applies when a consumer debt is placed in the hands of a debt collectors, whether or not a valid debt actually exists.

In support of his motion, Hsu attached a signed, and notarized, "Affidavit of Statements" which stated "I am an authorized user of the disputed credit card account by Chase." Additional attachments to Hsu's memorandum were: (1) a copy of the February 23, 2005 letter from Wolf & Abramson, signed by Oliver; (2) a printout that the

CCP described as appearing "to be an online genealogy and lineage website, and [Hsu's] handwritten highlights on the printout [that] note that a person by the name of Paul T. Oliver was born in 1929 and 'was an attorney at law in the USA, and succeeded as the 8th Marquis Testaferrata-Oliver'"; (3) a printout from the online Martindale-Hubbel Law Directory reciting that an attorney named Paul T. Oliver, Jr. was admitted to the Bar of the State of Michigan in 1950; (4) a printout from the State of Michigan's website, titled "Corporate Entity Details," listing the entity names "Paul T. Oliver, Jr., P.C." with a status as "Automatic Dissolution, Date: 7-15-2002"; (5) a printout of an online credit report showing inquiries made by Wolpoff & Abramson on February 18, 2005 and March 26, 2005; (6) a copy of Canter's affidavit, signed and notarized on February 16, 2006, in which Cantor states that Oliver did review Hsu's file; (7) a copy of Hsu's letter addressed to Great Seneca dated March 21, 2005; (8) a printout of an online web page titled "Large Rockville Companies by Employee Count"; and (9) a copy of Hsu's June 7, 2005 letter addressed to Great Seneca.

The CCP stated that "[a]ssuming that the FDCPA applied to [Great Seneca], the Court is not persuaded that [Great Seneca] has violated any of its provisions." The court noted that despite Hsu's submittion of a copy of his March 21, 2005 letter to Great Seneca, that no evidence in the record sufficiently established that Hsu either mailed that letter or that it was received by Great Seneca within the thirty day time period set forth in the FDCPA. In addition to those evidentiary failings, the court determined that nothing in the March 21 letter constituted a request for verification of the debt. Although the CCP stated that Hsu's June 7 letter "arguably could suffice as a request for verification, when viewing the facts in the light most favorable to [Hsu,]" that letter "fell

outside of the thirty day time period, which expired on or about March 23, 2005."

In response to Hsu's argument that his March 21 letter must have been received in light of his submission showing Wolpoff & Abramson checked Hsu's credit report on March 26, 2005, the CCP noted that "nowhere on this printout does [Hsu's] name, address, or any other identifying information appear." The court stated that even if that report was a true and correct copy of Hsu's credit report, "it does nothing by way of exculpation since [Hsu's] March 21, 2005 letter *did not request verification of the debt* from [Great Seneca]."[13]

The CCP also rejected Hsu's arguments that Great Seneca's attorneys acted in bad faith and violated the FDCPA. Hsu argued that Oliver did not conduct a meaningful review of his file and that Canter's affidavit in which Cantor states that Oliver did review Hsu's file is untrue. The CCP called Hsu's allegations specious in their reliance on printout copies from the internet to show that Oliver is "'likely retired' from the practice of law and was not involved in reviewing the file due to his age." The CCP found "the allegations against attorneys Oliver, Canter, and [Great Seneca's] counsel both nugatory and irrelevant, as nothing in the record reflects that they acted either in bad faith or in violation of the FDCPA." The court also stated that "[m]ost notably" it had ordered Hsu "to provide an Affidavit verifying his status as an authorized user on the account at issue. [Hsu's] 'Affidavit of Statements' is insufficient for the Court to extrapolate upon, and does not amount to the requisite level of a showing that a *genuine* issue of material fact exists between the parties."[14]

---

[13] Emphasis in original.

[14] Emphasis in original.

As a result of its findings, on May 17, 2006, the CCP granted Great Seneca's motion for summary judgment and denied Hsu's motion for summary judgment. On May 26, 2006, Hsu filed a motion to amend the CCP's May 17 judgment. In that motion, Hsu alleged an inconsistency between Great Seneca's affidavits and his own affidavit. Great Seneca's affidavit identified Hsu as the owner of a "Chase Freedom Gold MasterCard" while Hsu's affidavit identifies his account as a "Shell MasterCard from Chase." Hsu also directed the CCP to a treatise and case law on the FDCPA. The CCP denied Hsu's motion on June 28, 2006.

In support of his motion, Hsu contended that his credit card bill, titled "Shell MasterCard from Chase," was substantively different from previous bills Great Seneca submitted by affidavit titled "Chase Freedom Gold MasterCard" and, therefore, Great Seneca's affidavits were somehow unreliable. The court found "*no basis for such an argument*, particularly in light of the fact that [Hsu's] name, address, account number and balance are identical on both documents."[15] The CCP also noted that "neither document indicates a person, other than defendant, had access to the account." Consequently, the court held that "the Shell MasterCard bill is *insufficient evidence* that [Hsu] was not contractually obligated to [Great Seneca]. Rather, [Hsu's] evidence *only corroborates* [Great Seneca's] assertion that [Hsu] was *solely responsible for the debt*."[16]

---

[15] Emphasis added.

[16] Emphasis added. The CCP also rejected Hsu's contention that a treatise and case law he purportedly recently discovered justified amendment of the court's May 17, 2006 order. The treatise "merely defines a party who purchases a debt after the debt has become delinquent as a 'debt collector' under the FDCPA. [Hsu] fails to understand that 15 U.S.C. § 1692(i)(b), though awkwardly worded does not prohibit all legal recourse by debt collectors–it merely restricts such suits to the judicial district in which the real property exists." (citing *Addison v. Braud*, 105 F.3d 223 (5th Cir. 1997); *National Union Fire Ins.*

9

In denying Hsu's motion, the CCP concluded:

No matter which theory of relief the motion best fits under, [Hsu's] evidence is insufficient to grant relief. This Court has conducted an[] exhaustive and thorough review of the complete record, including [Hsu's] new evidence, interpretation of the Court docket, and recollection of the Court's instructions at Motion hearings. It is to be noted that [Hsu's] interpretation and recollection are both inaccurate. The Court, in reviewing the record before issuing this Order, fairly and diligently considered all evidence presented by both parties, *thus providing [Hsu] with "two bites of the apple."* As mentioned previously, such is especially the Court's practice when reviewing arguments and pleadings made by a *pro se* party.[17]

On July 13, 2006, Hsu appealed both the CCP's May 17, 2006 and June 28,

2006 orders to the Superior Court of the State of Delaware in and for New Castle

County ("Superior Court").[18]  The Superior Court stated that Hsu's appeal raised the

following issues:

(a) whether he raised genuine issues of material fact in the CCP;
(b) whether Great Seneca had authority to sue; and
(c) whether Wolpoff & Abramson . . . and . . . Levitsky . . . engaged in unauthorized practice of law.

The Superior Court agreed with the CCP's determination that Hsu was an

account holder and not merely an authorized user. It noted that monthly credit card

statements were sent to Hsu at his home address, that payments were made and that,

despite the account having two title designations, Hsu's name, address, account

---

*Co. of Pittsburgh, Pa. v. Schulman*, No. 86 CIV. 7914 (LLS), 1990 WL 116735 (S.D.N.Y. Aug. 8, 1990)). The court stated, "regardless of whether [Great Seneca] is a debt collector, 15 U.S.C. § 1692(i)(b) does not bar suit against [Hsu]. As a result, [Hsu's] additional treatise and case law fail to provide a sufficient basis for relief from judgment."

[17] Emphasis added.

[18] A copy of the Superior Court's order, in C.A. No. 06A-07-005 MMJ, is found at exhibit D of "Defendants' Memorandum of Law in Support of their Motion to Dismiss" submitted in a separate suit Hsu filed in this court (08-CV-293-SLR) against Wolpoff & Abramson, Great Seneca, Palisades Acquisition XVI, L.L.C., Fox Rothschild, and Levitsky based on collection activity related to the debt at issue in this action.

10

number, and balance were identical.

The Superior Court also agreed with the CCP's determination that Great Seneca

had authority to sue. Hsu contended that a debt collector has no authority to sue. The

court cited the relevant language from 15 U.S.C. § 1692(a) which recites:

> (6) The term "debt collector" means any person who . . . regularly collects
> or attempts to collect, directly or indirectly, debts owed or due or asserted
> to be owed or due another . . . . The term does not include –
>
> (F) any person collecting or attempting to collect any debt owed or due or
> asserted to be owed or due another to the extent such activity . . . (iii)
> concerns a debt which was not in default at the time it was obtained by
> such person.

The Superior Court stated:

> It is undisputed that Great Seneca attempted to collect a debt that it
> asserted to be in default, and that default existed when Great Seneca
> acquired the debt. Therefore, the exception under the FDCPA for
> assignees of debts not in default at the time of assignment does not apply
> to Great Seneca. Therefore, Great Seneca is a debt collector for
> purposes of the FDCPA.

The Superior Court also rejected Hsu's claim that Wolpoff & Abramson and

Levitsky engaged in unauthorized practice of law. The court noted that Levitsky and

Seth Neiderman (both attorneys with W&A) are members of the Delaware Bar and,

therefore, "they cannot engage in the unauthorized practice of law in Delaware."

Moreover, the court notes that "[i]n any event, *the unauthorized practice of law does not

create a private right of action. Hsu has no standing to raise this issue.*"[19]

With respect to the CCP's determination that Hsu's March 21, 2005 letter

purportedly sent to Great Seneca did not constitute a request for verification, the

---

[19] Emphasis added.

11

Superior Court disagreed citing the portion of the letter stating "I am writing this letter to

dispute the validity of the above mentioned debt." The Superior Court determined that

that "statement fulfills the statutory requirement of 15 U.S.C. § 1692g(b) . . . ." The

court also determined that "a genuine issue of fact remains whether [Hsu's] letter was

timely sent so as to require that collection efforts temporarily cease."

The Superior Court's June 7, 2007 order concluded that:

> This Court finds that the CCP's findings of fact are the product of an
> orderly and logical[] deduction process, *with one exception*. This Court
> concludes that a genuine issue of material fact has been raised as to
> whether [Hsu's] letter, dated March 21, 2005, was timely mailed so as to
> require that collection efforts temporarily cease. The Court further finds
> that the March 21, 2005 letter was sufficient notice that the debt was
> disputed pursuant to 15 U.S.C. § 1692g(b). *All other legal and factual*
> *findings of the CCP are hereby **AFFIRMED**. The judgment of the CCP is*
> **AFFIRMED** in part and **REVERSED** in part and the case is **REMANDED**
> for further proceedings.[20]

On April 4, 2008, Great Seneca moved to modify the CCP's May 17, 2006 order

granting summary judgment in Great Seneca's favor and against Hsu. Because that

order did not provide the specific amount of the judgment, Great Seneca sought

modification specifying a judgment against Hsu in the principal amount of $11,616 with

interest at 24% per annum from February 18, 2005 until paid, court costs, and attorneys

fees of 20%. On April 14, 2008, Hsu filed an opposition to Great Seneca's motion to

revise the May 17 order and a cross motion for summary judgment.

On June 27, 2008, the CCP granted Great Seneca's motion to amend the

summary judgment motion and denied Hsu's motion for summary judgment. The

docket entry recites:

---

[20] Italicisation added.

MOTION TO MODIFY SUMMARY JUDGMENT ORDER, MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO [GREAT SENECA'S]
MOTION TO REVISE SUMMARY JUDGMENT ORDER PRESENTED
BEFORE JUDGE JOSEPH FLICKINGER. AFTER HEARING FROM
BOTH PARTIES, THE MOTION TO MODIFY SUMMARY JUDGMENT
ORDER WAS GRANTED AND [HSU'S] MOTION FOR SUMMARY
JUDGMENT WAS DENIED. [GREAT SENECA'S] ATTORNEY WAIVED
ATTORNEY FEES AND AGREES TO CHANGE FROM CONTRACT
RATE TO LEGAL RATE OF INTEREST.

## B.   The Federal Action

During the pendency of the state court action (following the CCP's May 17, 2006

order granting Great Seneca's motion for summary judgment and denying Hsu's motion

for summary judgment and Hsu's May 26, 2006 motion to amend that judgment; but

prior to the CCP's June 28, 2006 denial of the motion to amend), Hsu filed his initial

complaint in this court. As noted above, Hsu filed his amended complaint on March 13,

2007. The amended complaint contains three claims for relief:  (1) violations of the Fair

Debt Collection Practices Act; (2) fraud; and (3) civil conspiracy.

Great Seneca moved to dismiss the original complaint and subsequently moved

to dismiss the amended complaint.

## DISCUSSION

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a

claim upon which relief can be granted.[21]  The purpose of a Rule 12(b)(6) motion to

dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide

the merits of the case.[22]  Evaluating a motion to dismiss under Rule 12(b)(6) requires

---

[21] Fed. R. Civ. P. 12(b)(6).
[22] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

13

the court to accept as true all material allegations of the complaint.[23] "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[24] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[25]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[26] A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief' beyond labels and conclusions."[27] Although heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged.[28] While the court assumes that all factual allegations in the complaint are true and draws all reasonable factual inferences in the light most favorable to the plaintiff, it rejects unsupported allegations, "bald assertions," or "legal conclusions."[29] "When a claim has been stated adequately, it may be supported by showing any set of facts consistent with

---

[23] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[24] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[25] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[26] *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Victaulic Co v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[27] *Twombly*, 127 S. Ct. at 1965.

[28] *Id.* at 1974.

[29] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted). The court is mindful that because Hsu is a *pro se* plaintiff his complaint must be construed liberally. *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)

the allegations in the complaint."[30]

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when reviewing a motion to dismiss.[31] Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6). When such materials are presented, the motion is treated as one for summary judgment. However, certain additional materials may be consider without converting the motion to dismiss into a motion for summary judgment. Moreover, a court is "not limited to the four corners of the complaint" and cases have allowed "consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint whose authenticity is unquestioned . . . ."[32] A plaintiff is entitled to notice and a fair opportunity to respond to any evidence the court might consider in its review of a motion to dismiss. Where a plaintiff had such notice, however, it is proper for the court to consider that evidence.[33]

---

[30] *Twombly*, 127 S. Ct. at 1969.

[31] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 988 F.2d 1192, 1196 (3d Cir. 1993).

[32] 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2007). On a motion to dismiss, the court may properly consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2004)). This would include taking judicial notice of the public records of the State court collection action (*Great Seneca v. Hsu*, CCP, C.A. No. 2005-06-493) and on appeal therefrom (*Hsu v. Great Seneca*, Superior Court, C.A. No. 60A-07-005 MMJ). *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, *including judicial proceedings*, in addition to the allegations in the complaint." (emphasis added)).

[33] *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).

Defendants urge the court to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine and pursuant to Fed. R. Civ. P. 12(b)(6).[34] Defendants also contend that the doctrine of *res judicata* and collateral estoppel bar the relitigation of Hsu's claims and issues that have been adjudicated in the prior state court action.

The Amended Complaint alleges the following facts.

On February 23, 2005, W&A sent Hsu a letter, signed by Oliver, concerning a defaulted Chase credit card debt purchased by Great Seneca. On February 18 and March 26, 2005, W&A checked Hsu's TransUnion credit report which showed Hsu was an authorized user of the Chase credit card account that was the subject of the February 23 letter. On March 21 and June 7, Hsu sent two "disputed letters" to W&A. On June 1, 2005, W&A sent Hsu a notice of intent to sue signed by attorney Bruce H. Cherkis. On June 29, 2005, Levitsky, of Fox Rothschild filed suit in the CCP against Hsu under the name of W&A and Fox Rothschild on behalf of Great Seneca. In the

---

[34] The *Rooker-Feldman* doctrine is named for two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under that doctrine "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). The Supreme Court recently clarified the scope of the *Rooker-Feldman* doctrine, holding that doctrine to be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Because the court concludes that the doctrine of *res judicata* and collateral estoppel bars Hsu from relitigating many of the issues already decided by in the state court action, it is unnecessary to make a determination based on defendants' *Rooker-Feldman* arguments. The court notes, however, that with regard to a potential violation of 15 U.S.C. § 1692g(b) the *Rooker-Feldman* doctrine would not be applicable in light of the Superior Court's remand of that issue to the CCP and, therefore, no final judgment on that issue has been entered.

16

state court action, Neiderman of Fox Rothschild was the attorney who appeared on

behalf of Great Seneca. Great Seneca was a debt collector with respect to the Chase

credit card debt because the debt was already in default when purchased by Great

Seneca on January 19, 2005. On its collection letters, W&A advertised that it had a

branch office in Wilmington, DE, but that firm is not licensed to do business in

Delaware. W&A has its name advertised in the telephone book of the Wilmington area

as "Wolpoff & Abramson, Attorneys" with a phone number and an address listed on

North Market Street. As a result of defendants' acts, Hsu suffered monetary damages,

loss of time with his family, loss of sleep, mental distress, and embarrassment.

In support of his claim for violations of the FDCPA, Hsu alleges that:

17. All defendants engaged in an unauthorized practice of law and
violated 15 USC § 1692i(b),[35] § 1692e[36] and its subsections by
bringing suit against me.

18. The defendants Great Seneca . . . and Wolpoff & Abramson . . .
violated 15 USC § 1692e, § 1692e(2)(A),[37] § 1692e(3),[38] and

---

[35] 15 U.S.C. § 1692i recites: "Legal actions by debt collectors
(a) Venue

Any debt collector who brings any legal action on a debt against any consumer shall--

(1) in the case of an action to enforce an interest in real property securing the consumer's
obligation, bring such action only in a judicial district or similar legal entity in which such real
property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial
district or similar legal entity--

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

(b) Authorization of actions

Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors."
[36] 15 U.S.C. § 1692e recites: "A debt collector may not use any false, deceptive or misleading
representation or means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conduct is a violation of this section."

[37] 15 U.S.C. § 1692e(2)(A) prohibits: "(2) The false representation of--(A) the character, amount,
or legal status of any debt . . ."

[38] 15 U.S.C. § 1692e(3) prohibits: "(3) The false representation or implication that any individual is
an attorney or that any communication is from an attorney."

§ 1692e(10)[39] by sending me the collection letter bearing an
attorney's name while knowing that I was an authorized user of the
credit card account.

19. The defendants Great Seneca . . . and Wolpoff & Abramson . . .
violated 15 USC § 1692e, § 15 USC 1692e(2)(A), and 15 USC
§ 1692e(5)[40] by sending me NOTICE OF INTENT TO SUE while
the attorney was not admitted in Delaware, nor was Wolpoff &
Abramson . . . registered to practice law in Delaware.

20. After filing the lawsuit, the defendants Fox Rothschild . . . and . . .
Levitsky did not send me a written notice as prescribed by 15 USC
§ 1692g(a).[41] Nor did they cease collection as prescribed by
§ 1692g(b)[42] after I disputed the debt in my answer to the
complaint.

---

[39] 15 U.S.C. § 1692e(10) prohibits: "(10) The use of any false representation or deceptive means
to collect or attempt to collect any debt or to obtain information concerning a consumer."

[40] 15 U.S.C. § 1692e(5) prohibits: "The threat to take any action that cannot legally be taken or
that is not intended to be taken."

[41] 15 USC § 1692g(a) recites: "(a) Notice of debt; contents
Within five days after the initial communication with a consumer in connection with the collection of any
debt, a debt collector shall, unless the following information is contained in the initial communication or the
consumer has paid the debt, send the consumer a written notice containing--
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity
of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the
debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a
judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer
by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will
provide the consumer with the name and address of the original creditor, if different from the current
creditor."

[42] 15 U.S.C. § 1692g(b) recites: "(b) Disputed debts
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a)
of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name
and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed
portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name
and address of the original creditor, and a copy of such verification or judgment, or name and address of
the original creditor, is mailed to the consumer by the debt collector. Collection activities and
communications that do not otherwise violate this subchapter may continue during the 30-day period
referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing
that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address
of the original creditor. Any collection activities and communication during the 30-day period may not
overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request
the name and address of the original creditor."

18

21. The defendant . . . Levitsky violated 15 USC § 1692e, § 1692e(10) and § 1692e(14)[43] by suing me and communicating with me under the name of Wolpoff & Abramson . . . in addition to Fox Rothschild . . . .[44]

With the exception of paragraph 20 of the amended complaint, concerning

alleged violation of 15 U.S.C. §1692g(b), Hsu's claim for violation of the FDCPA is

barred by the doctrine of *res judicata*, collateral estoppel, and/or fails to state a claim

upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Under the doctrine of *res judicata*, a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties. Similarly, where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case. Essentially, *res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated.[45]

The CCP rejected, and the Superior Court affirmed, that Hsu's contention that all

defendants engaged in unauthorized practice of law and violated sections 1692i(b) and

1692e of the FDCPA by bringing suit against him. The CCP stated that "[a]ssuming the

FDCPA applied to [Great Seneca], the Court is not persuaded that [Great Seneca] has

violated any of its provisions."[46] The CCP also determined that "[Hsu] fails to

understand that 15 U.S.C. § 1692(i)(b), though awkwardly worded does not prohibit all

legal recourse by debt collectors–it merely restricts such suits to the judicial district in

---

[43] 15 U.S.C. § 1692e(14) prohibits: "The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

[44] D.I. 34, ¶¶ 17-21.

[45] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) (citations omitted).

[46] With the exception of the CCP's finding that Great Seneca had not violated 15 U.S.C. § 1692g(b), the Superior Court held that "[a]ll other legal and factual findings of the CCP are hereby **AFFIRMED**."

which the real property exists." In affirming the CCP's determination, the Superior

Court specifically found that Great Seneca is a debt collector for the purposes of the

FDCPA and had authority to sue. It also affirmed the CCP's determination rejecting

Hsu's contention that Wolpoff & Abramson and Levitsky engaged in unauthorized

practice of law. Levitsky is a member of the Delaware Bar and, therefore, "cannot

engaged in the unauthorized practice of law in Delaware." That court noted further that

"the unauthorized practice of law does not create a private right of action. Hsu has no

standing to raise this issue." Moreover, Hsu's amended cornplaint alleges that "Levitsky

of Fox Rothschild . . . sued me under the name of Wolpoff & Abramson . . . and Fox

Rothschild on behalf of Great Seneca . . . ." It also alleges that Fox Rothschild and

Levitsky "acted as the local counsel for . . . Wolpoff & Abramson . . . during the action

brought against me [in the state court action]." In light of the holdings of the CCP and

Superior court, therefore, the allegations of paragraph 17 of Hsu's complaint must be

dismissed.[47]

Paragraph 18 of the amended complaint alleges violations of sections 1692e,

1692e(2)(A), 1692e(3), and 1692e(10) "by sending me the collection letter bearing an

attorney's name while knowing I was an authorized user of the credit card account."

The CCP determined, and the Superior Court affirmed, that Hsu was not merely

---

[47] Moreover, the court also notes that other district courts have indicated that a claim for unauthorized practice of law is not cognizable under the FDCPA. *See, e.g., Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 369 F. Supp. 2d 353, 361 (E.D.N.Y. 2005) ("[A]llegations relating to the unauthorized practice of law are the province of state bar associations and state courts. Plaintiffs' allegations in this matter certainly might interest [the state's] Attorney Registration and Disciplinary Committee, but they do not appear to be cognizable under the FDCPA." (citation and internal quotation marks omitted); *Bass v. Arrow Financial Services, L.L.C.*, No. 01 C 8595, 2002 WL 1559635, at *3 (N.D. Ill. July 16, 2002) (same).

an "authorized user" of the credit card account, as well as, rejecting his arguments

concerning the differing titles appearing on the submitted credit card statements, *e.g.*,

"Chase Freedom Gold MasterCard" versus "Shell MasterCard from Chase." In denying

Hsu's motion to amend its May 17, 2006 order, the court found "no basis for [Hsu's

argument based on the differing statement titles], particularly in light of the fact that

[Hsu's] name, address, account number and balance are identical on both documents."

The CCP determined that Hsu's "evidence only corroborates [Great Seneca's] assertion

that [Hsu] was solely responsible for the debt." The Superior Court again specifically

affirmed "the CCP's finding that there is no genuine issue of material fact that [Hsu] is

the debtor on the account." As a result of that determination, paragraph 18 of the

amended complaint fails to state a claim as there was no false representation of "the

character, amount or legal status"[48] of that debt; nor a "false representation or

implication that any individual is an attorney or that any communication is from an

attorney";[49] nor that there was a "false representation or deceptive means" to collect the

debt.

Paragraph 19 of the amended complaint alleges violation of sections 1692e,

1692e(2)(A), and 1692e(5) of the FDCPA as a result of the intent to sue letter while the

signatory of that letter was not an attorney admitted in Delaware and because Wolpoff

& Abramson was not registered to practice law in Delaware. As with paragraph 18, the

determination that Hsu is the debtor on the account at issue requires dismissal of

---

[48] The CCP and Superior Court determined that Hsu is responsible for the debt at issue and the CCP modified its summary judgment order confirming the amount of debt, and other costs, owed by Hsu.

[49] The amended complaint alleges that the purportedly offending communications were signed by attorneys; there is no allegation of communication from one falsely representing or implying they were an attorney when they were not.

paragraph 18. As above, there was no false representation of the "character, amount, or legal status" of the debt and 1692e(5) was not violated for violating the prohibition of threatening "to take any action that cannot legally be taken or that is not intended to be taken."[50]

Paragraph 20 alleges violation of sections 1692g(a) and 1692g(b) of the FDCPA. Hsu's allegation of a violation of section 1692g(a) must be dismissed. The amended complaint alleges that the first communication to Hsu regarding the disputed debt was a February 23, 2005 letter from Wolpoff & Abramson. The front of that letter provides both the amount of the debt and the name of the creditor to whom the debt is owed. The back of the letter substantially tracks subsections (3)-(5) of section 1692g(a). Therefore, Hsu's allegations concerning section 1692g(a) in paragraph 20 must be dismissed for failure to state a claim. Because the Superior Court determined there is a question of fact as to whether Hsu's March 21, 2005 letter requesting verification of the debt was mailed by Hsu and/or received by Great Seneca, defendants' motion to dismiss with regard to the purported violation of section 1692g(b) is denied.

Paragraph 21 alleges Levisky violated sections 1692e, 1692e(10), and 1692e(14). These allegations must be dismissed for failure to state a claim. As noted above, the amended complaint acknowledges that Levitsky and Fox Rothschild were retained as local counsel for Wolpoff & Abramson as counsel for Great Seneca. The

---

[50] Great Seneca and Wolpoff & Abramson certainly had the legal right to sue Hsu for the debt, and did so, as demonstrated by the CCP's summary judgment order, the Superior Court's order, and the CCP's subsequent entry of judgment for a specific monetary amount. Moreover, the fact that the signatory of the intent to sue letter is not a member of the Delaware bar, and Wolpoff & Abramson's lack of registration to practice law in Delaware is irrelevant. As the amended complaint acknowledges, local Delaware counsel was retained to pursue the state court litigation.

CCP and the Superior Court determined that Hsu was solely responsible for the

disputed debt, and that Great Seneca had the authority to sue on that debt. Levitsky

and Fox Rothschild were retained to pursue that litigation in the state court action.

Nothing in the amended complaint, therefore, states a claim for violation of the

prohibition of "[t]he use of any business, company, or organization name other than the

true name of the debt collector's business, company, or organization."

Hsu's second claim is for fraud. In support of that claim, Hsu alleges that:

22.   All Defendants willfully misrepresented the legal status of
      Defendant Great Seneca . . . as a creditor while they actually knew
      it was a debt collector.

23.   Defendants Great Seneca . . . and Wolpoff & Abramson . . .
      conspired to induce me to pay a debt not owed to Great Seneca
      . . . through collection letters and threatening of the lawsuit.

24.   Defendants Fox Rothschild and . . . Levitsky conspired with Wolpoff
      & Abramson . . . to falsely represent its business and legal status in
      Delaware to facilitate the debt collection activities.

25.   All Defendants conspired to force me to pay a debt not owed to
      Great Seneca . . . by suing me.[51]

At common law, fraud (or deceit) consists of: 1) a false representation,
usually one of fact, made by the defendant; 2) the defendant's knowledge
or belief that the representation was false, or was made with reckless
indifference to the truth; 3) an intent to induce the plaintiff to act or to
refrain from acting; 4) the plaintiff's action or inaction taken in justifiable
reliance upon the representation; and 5) damage to the plaintiff as a result
of such reliance.[52]

The basis for Hsu's fraud claim is that defendants fraudulently sought to collect a

debt for which Hsu was not liable. In light of the state courts' determinations that Hsu is

[51] D.I. 34, ¶¶ 22-25.
[52] *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

23

liable for the disputed debt, there is no "false representation . . . made by the

defendant" concerning that debt. Consequently, Hsu's claim for fraud is dismissed for

failure to state a claim.

Hsu's third claim is for civil conspiracy. In support of that claim, Hsu alleges that:

26. By reference paragraphs 23, Defendants Great Seneca . . . . and Wolpoff & Abramson . . . also committed conspiracy by sending me collection letters threatening of the lawsuit.

27. By reference paragraphs 24, Defendants Fox Rothschild, . . . Levitsky and Wolpoff & Abramson . . . also committed conspiracy by falsely representing the business and legal status of Wolpoff & Abramson . . . in Delaware to facilitate their debt collection activities.

28. By reference paragraphs 25, all defendants also committed conspiracy by suing me.[53]

"Delaware law imposing liability for civil conspiracy is well settled. Plaintiffs must

prove: (1) A confederation or combination of two or more persons; (2) An unlawful act

done in furtherance of the conspiracy; and (3) Actual damage."[54] "The gravamen of an

action in civil conspiracy is not the conspiracy itself but the underlying wrong which

would be actionable absent the conspiracy."[55] Again, the gravamen of Hsu's civil

conspiracy is that defendants conspired to collect a debt he did not owe. Because it

has already been determined in the state court action that Hsu is liable on the disputed

debt, defendants pursuit of that debt through the state court litigation is not an

underlying wrong that would be actionable absent the conspiracy. Therefore, Hsu's

claim for civil conspiracy is dismissed for failure to state a claim.

---

[53] D.I. 34, ¶¶ 26-27.

[54] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987) (citing *McLaughlin v. Copeland*, 455 F. Supp. 749, 752 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979) (Table)).

[55] *McLaughlin*, 455 F. Supp. at 752.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss (D.I. 37) is

**GRANTED** in part and **DENIED** in part.

1.    Defendants' motion to dismiss the amended complaint's claim for violation

of 15 U.S.C. § 1692g(b) is **DENIED**.

2.    Defendants' motion to dismiss the remaining claims of the amended

complaint is **GRANTED**.

January 5, 2009
Wilmington, Delaware

UNITED STATES MAGISTRATE JUDGE

25