## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

LIFENG LEE HSU, )
)
      Plaintiff, )
)
  v. ) Civ. No. 06-401-MPT
)      08-293-MPT
WOLPOFF & ABRAMSON L.L.P., )
et al., ) CONSOLIDATED
)
      Defendants. )

## **MEMORANDUM ORDER**

### **BACKGROUND[1]**

On June 23, 2006, Lifeleng Lee Hsu ("Hsu") filed a complaint in this court against

a number of defendants,[2] alleging violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1693, *et. seq.* based on efforts to collect a debt for a Chase

MasterCard purportedly owed by Hsu to Great Seneca.  Subsequently, on March 13,

2007, an amended complaint was filed, adding claims for fraud and civil conspiracy.

Previously, on June 29, 2005, Levitsky and Fox Rothschild filed suit on behalf of

Great Seneca (as assignee) against Hsu seeking payment on the balance due and

owing on a credit card debt ($11,616.00), together with interest at 24% per annum from

February 18, 2005 until paid, plus court costs and attorneys' fees of 20% in the Court of

---

[1] For a more detailed background, refer to the prior decisions dated January 5,
2009 and September 18, 2009.

[2] Great Seneca Corporation ("Great Seneca"), Wolpoff & Abramson, L.L.P.
("W&P"), Fox Rothschild, L.L.P ("Fox Rothschild") and Neal J. Levitsky, Esquire
("Levitsky") (collectively, "defendants") were the named defendants in the first action,
06-401.

Common Pleas for the State of Delaware in and for New Castle County ("CCP"). In his

answer to Great Seneca's complaint, Hsu denied the debt and counterclaimed that

Great Seneca violated the FDCPA by allegedly continuing collection attempts before

providing written verification of the debt, similar to the claims Hsu subsequently raised

in the District Court. In response, Great Seneca filed a motion to dismiss Hsu's

counterclaim. On September 30, 2005, the CCP dismissed Hsu's counterclaim alleging

violation of the FDCPA without prejudice. On December 30, 2005, Great Seneca filed a

motion for summary judgment and on January 18, 2006, Hsu filed a opposition to that

motion and a cross-motion for summary judgment. As a result of its findings, of May

17, 2006, the CCP granted Great Seneca's motion for summary judgment and denied

Hsu's motion for summary judgment. Specifically, the CCP found that assuming the

FDCPA applied to Great Seneca, there was insufficient evidence that it violated that

Act's provisions. One of the issues was whether Hsu's March 21, 2005 letter to Great

Seneca disputing the debt was either mailed by Hsu or received by Great Seneca within

the thirty-day time period under 15 U.S.C. § 1692g(b). The CCP concluded that there

was no evidence in the record which sufficiently established that this had occurred.[3]

Hsu then filed a motion with the CCP to amend its judgment alleging an inconsistency

between Great Seneca's affidavits and his own affidavit. The CCP denied the motion

on June 28, 2006. It also clarified that Hsu is solely responsible for the debt and Great

Seneca, as a debt collector, was not barred under the FDCPA from filing suit against

_____

[3] That court also questioned whether the March 21 letter constitute a request for
verification of the debt, as allowed under the statute. Pursuant to § 1692g(b), when the
consumer notifies the creditor that the debt is disputed, collection activities and other
similar communications must cease.

2

Hsu.[4]

Thereafter, Hsu appealed the decision of the CCP. On June 7, 2007, the Superior Court affirmed in part and reversed and remanded in part the CCP decisions after finding that there remained an issue of fact as to whether Hsu timely mailed a letter requiring the collection efforts to temporarily cease under 15 U.S.C. § 1692g(b). The Superior Court affirmed all other legal and factual findings of the CCP, specifically that Hsu was the debtor on the account and that Great Seneca was a debt collector for the purpose of the FDCPA. It also concluded that the March 21, 2005 letter was sufficient notice that the debt was disputed under § 1692g(b).

Hsu then appealed to the Delaware Supreme Court, which denied the appeal on October 25, 2007 for failure to comply with Delaware Supreme Court Rule 42.

In April 2008, Great Seneca moved in CCP to modify that court's summary judgment order of May 17, requesting that the order reflect the monetary amounts of the judgment.[5] The following month, Hsu received a letter, dated May 5, 2008, from W&A, on behalf of Palisades Acquisition ("Palisades")[6] and Great Seneca, requesting payment of the judgment amount of $22,899.18.[7] Thereafter, at a hearing on June 27,

---

[4] Between the May 2006 decision granting Great Seneca's motion for summary judgment and the June 28, 2006 CCP decision denying Hsu's motion to amend the judgment, Hsu filed in this court alleging FDCPA violations, similar to those raised in CCP.

[5] The original CCP order granting summary judgment read that judgment was entered "for the full amount of the complaint." Because the exact monetary amount was not referenced, Great Seneca could not execute on the judgment.

[6] Palisades Acquisition was the assignee of Great Seneca regarding the Chase MasterCard debt.

[7] That amount apparently was determined by adding the debt amount, $11,616.00, with interest at 24% per annum from February 18, 2005 until that date, plus court costs and attorneys' fees of 20%.

3

2008, the CCP addressed both the issue on remand from Superior Court and Great
Seneca's motion to modify the summary judgment order. According to the transcript of
that hearing, the CCP concluded that Hsu could not prove that he had sent a letter to
Great Seneca disputing the debt or that Great Seneca received that letter within the
thirty-day period and ultimately entered a modified judgment in favor of Great Seneca in
the amount of $11,616.00 with interest at the legal rate from February 18, 2005 until the
debt is paid and court costs.[8]

Prior to the Superior Court decision, in April 2007, defendants moved to dismiss
the amended complaint filed in the District Court 06-401 action pursuant to Fed. R. Civ.
P. 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine
and pursuant to Fed. R. Civ. P. 12(b)(6).[9] Defendants also argued that the doctrine of
*res judicata* and collateral estoppel barred the relitigation of Hsu's claims and issues
that had previously been adjudicated in the prior state court action. In its decision
dated January 5, 2009, this court granted defendants' motion to dismiss the amended
complaint, except for violation of 15 U.S.C. § 1692g(b). In granting defendants' motion,
this court determined that, except for paragraph 20 of the amended complaint

---

[8] According to the CCP docket and the transcript, counsel for Great Seneca
waived attorneys' fees and agreed to apply the legal rate of interest, rather than the
contract rate of interest, to the debt.

[9] The *Rooker-Felman* doctrine is name for two United States Supreme Court
decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia
Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under that doctrine, "a party losing
in state court is barred from seeking what in substance would be appellate review of the
state judgment in a United States district court, based on the losing party's claim that
the state judgment itself violates the loser's federal rights." *Johnson v. Grandy*, 512
U.S. 997, 1005-06 (1994).

concerning an alleged violation fo 15 U.S.C. § 1692g(b),[10] Hsu's claim for violation of the FDCPA was barred by the doctrine of *res judicata*, collateral estoppel and/or failed to state a claim upon which relief may be granted.  Because the Superior Court determined that there was a question of fact as to whether Hsu's March 21, 2005 letter requesting verification of the debt was mailed by Hsu and/or received by Great Seneca, defendants' motion to dismiss with regard to the purported violation of § 1692g(b) was denied.  Although at the time this court rendered its decision it was aware of the decision of CCP regarding the June 27, 2008 hearing as noted on the docket,[11] it was not aware of the CCP's analysis of or ruling on the § 1692g(b) issue since a copy of the transcript of the hearing had not been provided.  Since that opinion was rendered, a transcript of the CCP hearing has been provided in support of another motion to dismiss filed by defendants.

In response to this court's January 5, 2009 decision, Hsu filed a motion for an interlocutory appeal on January 12, 2009.

After the May 5, 2008 letter by W&A was received by Hsu and before the June 27, 2008 hearing in CCP and while the case dispositive motions were pending in this court in 06-401, Hsu initiated a second action in this court, 08-293.  This second action was the same as the first suit, with the added claims of violations of 15 U.S.C. §§

---

[10] For opinion, *see* D.I. 45.  Paragraph 20 of the amended complaint alleged that defendants Fox Rothschild and Levitsky failed to cease collection as prescribed by § 1692g(b), after Hsu claimed that he disputed the debt.

[11] The docket entry of the CCP's decision merely advised that Great Seneca's motion to modify the summary judgment order was granted and Hsu's motion for summary judgment was denied.  It did not indicate that the § 1692g(b) issue had been addressed at the hearing or the findings made in that regard.

5

1692e(2), 1692e(10) and 1692f(1) primarily based on May 5, 2008 letter.[12]  Because of

the similarity between the two matters in District Court, the cases were consolidated on

March 31, 2009.  In response to the complaint, defendants filed a motion to dismiss

under Fed. R. Civ. P. 12(b)(6), to which Hsu responded with a cross dispositive motion

(motion for summary judgment).  On September 18, 2009, this court granted

defendants' motion to dismiss and denied Hsu's motion for summary judgment.

This memorandum order addresses the 15 U.S.C. § 1692g(b) issue and Hsu's

motion for an interlocutory appeal.

**Discussion**

As noted previously herein, at the time this court rendered its decision in January

2009, it was unaware of the CCP ruling on the March 21, 2005 debt dispute letter.

During the CCP June 27, 2008 hearing, Hsu was given the opportunity to provide

support for his claim that he wrote and forwarded a letter to Great Seneca disputing the

debt within the time period allowed under the statute.  Hsu admitted that he had no

proof to support his contention that the letter was mailed on March 21, 2005.  Great

Seneca maintained that it never received the purported letter.  As a result, the CCP

determined that Hsu could not meet his burden of the preponderance of the evidence

that the letter had been sent.  Further, the CCP found that there was no reason under

§ 1692g(b) requiring collection efforts to cease.  Having resolved that issue of material

fact in favor of Great Seneca, the CCP determined that Great Seneca was allowed to

proceed with its collection efforts.

---

[12] Hsu also added a defendant to the 08-293 action, Palisades, whose identity
Hsu obtained through the May 5, 2008 letter.

6

Had this court been aware of the aforementioned ruling by the CCP, it would

have included it in its analysis in the January 2009 opinion.[13]  It was during the review of

the motions addressed in its decision of September 18, 2009 that the court was

provided with the transcript from the CCP hearing in June 2008.

In its January 2009 opinion, this court noted the law under *res judicata* and

collateral estoppel:

> Under the doctrine of *res judicata*, a party is foreclosed from bringing a
> second suit based on the same cause of action after a judgment has been
> entered in a prior suit involving the same parties.  Similarly, where a court
> or administrative agency has decided an issue of fact necessary to its
> decision, the doctrine of collateral estoppel precludes relitigation of that
> issue in a subsequent suit or hearing concerning a different claim or
> cause of action involving a party to the first case.  Essentially, *res judicata*
> bars a court or administrative agency from reconsidering conclusions of
> law previously adjudicated while collateral estoppel bars relitigation of
> issues of fact previously adjudicated.[14]

The purpose of *res judicata* or claim preclusion is that it "bars repetitious litigation

based on the same cause of action."[15]  Factors that are examined to determine

application of the doctrine are:  "(1) final judgment on the merits in a prior suit involving;

(2) the same parties or their privities; and (3) a subsequent suit based on the same

cause of action."[16]  Issue preclusion, formerly called collateral estoppel, provides that

"once a court has decided an issue of fact or law necessary to its judgment, that

---

[13] Based upon the review of the CCP and Superior court dockets provided in
support of the motion to dismiss, there is no indication that an appeal was taken by Hsu
from that ruling.

[14] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) (citations omitted).

[15] *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 266 (3d Cir.
1978) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1986)); *see also United
States v. Panhandle Eastern Corp.*, 681 F. Supp. 229, 235 (D. Del. 1988).

[16] *Corestates Bank v. Huls American, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."[17]  Issue preclusion applies when the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior action; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action.[18]

In light of the holding of the CCP, the allegations in paragraph 20 relating to 15 U.S.C. § 1692g(b) should be dismissed based on claim and issue preclusion, since an issue of fact necessary to the decision[19] precludes relitigation of that issue in a subsequent suit or hearing which involved a party in the first case.[20]  Moreover, under the law noted herein, this court should not reconsider legal conclusions previously adjudicated in CCP.  As evidenced by the record, Hsu was provided ample and fair opportunity to litigate the § 1692g(b) issue.  Therefore, the decision of January 5, 2009 is amended to grant dismissal of all claims, including those related to 15 U.S.C. § 1692g(b), contained in paragraph 20 of the amended complaint.

As a result of the findings herein which result in complete dismissal of all claims, Hsu's motion for certification for an interlocutory appeal on the January 5, 2009 decision is moot.

---

[17] *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[18] *Montana*, 440 U.S. 153-55; *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 332-33 (1971).

[19] The issue of fact was whether the March 21, 2005 letter had been timely sent.

[20] The first matter is the action is CCP to which both Great Seneca and Hsu were parties.

8

Therefore, for the reasons stated above,

IT IS ORDERED and ADJUDGED that the decision of the memorandum

order of January 5, 2009 is amended as follows: defendants' motion to dismiss (D.I.

37), including the issues raised under 15 U.S.C. § 1692g(b), is **GRANTED**.

IT IS FURTHER ORDERED that Hsu's motion for certification for an

interlocutory appeal (D.I. 46) is **DENIED AS MOOT**.

September 21, 2009                    /s/ Mary Pat Thynge
                                      UNITED STATES MAGISTRATE JUDGE

9